IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| REID M. JENSEN,<br><br>    Plaintiff,<br><br>vs.<br><br>UNIVERSITY PROPERTIES, INC.,<br><br>    Defendant. | ORDER<br><br>AND<br><br>MEMORANDUM DECISION<br><br><br>Case No. 2:05-CV-172 TC |

    Reid Jensen sued his former employer University Properties, Inc. (UPI) claiming that UPI willfully violated the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq., because it failed to pay Mr. Jensen overtime for hours he worked in excess of forty hours a week. UPI denies any violation and contends that for certain periods of his employment Mr. Jensen was an exempt employee under the FLSA and therefore not entitled to overtime compensation during those periods. Moreover, according to UPI, Mr. Jensen did not work the number of hours he claims to have worked and is not entitled to the overtime he claims. Finally, UPI maintains that if it did violate the FLSA, it acted in good faith, and the statute of limitations bars certain of Mr. Jensen's claims.

    In August 2006, a trial was held to the court, sitting without a jury, to determine these issues. Based on the evidence from the trial, court concludes that the statute of limitations does not bar Mr. Jensen's claims, and UPI owes Mr. Jensen overtime compensation for two non-exempt periods of time. Accordingly, the court enters judgment for Mr. Jensen, as described in

detail below.

## FINDINGS OF FACT

**Undisputed Facts**

A number of facts were established by admissions in the pleadings before trial, in previous orders of the court, or by stipulation of counsel. Those facts include the following:

Mr. Jensen is a citizen and resident of Salt Lake County, Utah. UPI is a Utah corporation with its principal place of business in Provo, Utah. UPI is engaged in interstate commerce and it is subject to the wage and overtime compensation requirements of the FLSA.

Mr. Jensen was employed by UPI from December 28, 2002, to December 23, 2004. From December 28, 2002, through May 1, 2004, Mr. Jensen worked at UPI's Sherwood Hills Resort (the Resort) in Wellsville, Utah. Around the first of May 2004, UPI transferred Mr. Jensen to UPI's Branbury Park Apartments (Branbury), located in Provo, Utah. Mr. Jensen worked at Branbury until approximately August 15, 2004, and then returned to the Resort. Mr. Jensen remained at the Resort until December 23, 2004, when UPI terminated his employment.

From January 1, 2003, through May 30, 2003, UPI paid Mr. Jensen a yearly salary of $23,800. From June 1, 2003, through December 23, 2004, when he left UPI, Mr. Jensen's salary was $25,000 per year. UPI twice gave Mr. Jensen $200 bonuses. Throughout his employment with UPI, UPI gave Mr. Jensen housing valued at $500 per month. UPI never paid Mr. Jensen overtime compensation.

Mr. Jensen was a non-exempt employee under the FLSA for the following periods: December 28, 2002, through May 15, 2003, and July 17, 2003, through December 23, 2004.

**Findings on Disputed Facts**

UPI hired Mr. Jensen to be the chief engineer at the Resort. Mr. Jensen was expected to oversee all of the maintenance needs at the Resort and a remodeling project that was just beginning. For the first days of his employment, Mr. Jensen was paid on an hourly basis. But then on approximately January 1, 2003, UPI started paying Mr. Jensen an annual salary.

During his first three months at Sherwood Hills, Mr. Jensen was usually the only maintenance worker at the Resort. But in April 2003, UPI, at Mr. Jensen's request, hired other maintenance people to help Mr. Jensen. UPI first hired two maintenance employees, John Ebersole and Randy Leishman. Another maintenance employee, Chad Fisher, was hired in May 2003, and a fourth person, Wayne Peterson, in June of that year. But it was not until May 16, 2003, that these new workers' combined hours equaled or exceeded eighty hours a week.

Mr. Jensen was involved in interviewing the applicants and recommending the ones he believed would be the most capable to do the work. Once these new employees began working, Mr. Jensen assigned them their daily tasks and jobs each day and checked on them throughout the day.

Before July 2003, Mr. Jensen had considerable discretion in carrying out his job responsibilities. During that time, his only supervision came from Mike Gavura, the maintenance manager, and Richard Knapp, the president and sole shareholder of UPI. Mr. Jensen testified that on Monday mornings, Mr. Gavura gave him a list of the work to be done during the week. Sometimes, Mr. Knapp would give Mr. Jensen a list of the work that he wanted Mr. Jensen to do.

On July 17, 2003, UPI hired Keith Howard to replace Mr. Jensen as the chief engineer.

There is no dispute that once Mr. Howard came to work at Sherwood Hills Resort, he was Mr. Jensen's supervisor.

UPI did not keep daily records of the time Mr. Jensen actually worked. And the parties offered different accounts of Mr. Jensen's work schedule and work habits. But, generally, Mr. Howard corroborated Mr. Jensen's testimony regarding the hours Mr. Jensen worked.

Mr. Howard testified that he (Mr. Howard) began his work day at seven a.m., took a half-hour lunch break, and ended the day at four or five p.m. Mr. Howard further testified that his hours were essentially the same as Mr. Jensen's, except that Mr. Jensen was sometimes required to respond to guest calls after hours. Indeed, Mr. Jensen's duties included after-hour snow removal and after-hour responses to guest complaints about maintenance problems in their rooms. These duties often required Mr. Jensen to work before seven a.m. and after five-thirty p.m., and on weekends. Mr. Howard, who did not live at the Resort, was not able to personally corroborate Mr. Jensen's testimony regarding after-hour work time, but he did verify the validity of Daily Work Logs submitted by Mr. Jensen. He also noted that he would often hear about after-hour maintenance calls to which Mr. Jensen had responded.

Mr. Howard testified that during the time Mr. Jensen worked at Branbury (from May 15, 2004, to August 15, 2004), Mr. Jensen had a regular work schedule and generally was not responsible for after-hours calls. While at Branbury, Mr. Jensen typically began work at seven a.m. and ended his day sometime around five p.m. Although Mr. Jensen usually did not work on weekends, Mr. Howard testified that he and Mr. Jensen often worked two Saturdays a month. On these Saturdays, they worked on average fewer hours than they did on weekdays. Mr. Howard testified that they worked between five to nine hours on those Saturdays.

Mr. Jensen testified about the long hours he worked, particularly during the period when he was first hired at the Resort until Keith Howard arrived. Although Mr. Jensen freely admitted that his calculations about the hours he worked were only estimates based primarily on his memory and some records, such as records showing after-hours calls, his testimony was sufficiently detailed and supported by other evidence that the court accepts generally Mr. Jensen's testimony. For example, Mr. Jensen testified that before Mr. Howard was hired, Mr. Jensen worked seven days a week and took only three days off during that entire time. Overall, according to Mr. Jensen, although some weeks he worked 75 hours a week, he estimated that he worked an average of 63 hours a week for the entire period he worked for UPI. Based on this estimate, Mr. Jensen claims he worked on average twenty-three hours of overtime per week.[1]

Keith Howard had all employees working under him in the maintenance department, including Mr. Jensen, fill out daily work logs. He filed the daily work logs in the UPI office. (Mr. Jensen testified that he filled out a daily work log for each day he worked under Mr. Howard's supervision, both at the Resort and at Branbury, but UPI produced only a few of these daily work logs.) And although the exhibits that were produced do not cover all of the days Mr. Jensen worked under Keith Howard's supervision, they are helpful because they corroborate, in large part, Mr. Jensen's testimony regarding the number of hours he worked.

UPI called several witnesses from the Resort to testify about the number of hours Mr. Jensen worked. But, for the most part, these witnesses were not helpful because they had only a limited knowledge of Mr. Jensen's hours.

---

[1] Mr. Jensen further divides this twenty-three hour figure up as follows: two hours times five weekdays, plus eight hours for Saturday, plus five hours for Sunday. (See Pl.'s Ex. 144.)

For example, Alaina Scalise, the front office manager at the Resort, testified that she would typically see Mr. Jensen at seven-thirty a.m. or eight a.m., when he stopped at the front desk to check in and get coffee. She also testified that he typically took an hour for lunch because the general manager often was looking for Mr. Jensen. But the court did not find Ms. Scalise's evidence particularly helpful because, as discussed above, Mr. Jensen worked without supervision until Mr. Howard arrived and therefore, there was no requirement that he notify the front desk or the manager before he began work or returned from lunch. Also, Ms. Scalise did not live at the Resort and did not know what hours Mr. Jensen worked after she left the Resort in the afternoon.

Sara Riggs, another Resort employee, testified that when she arrived at the Resort at eight a.m., sometimes Mr. Jensen was already there and sometimes he was just checking in at the desk. She admitted that she had no knowledge about the length of time he took for lunch or whether he worked on weekends.

Rachel Stenquist worked at the front desk of the Resort during part of the time Mr. Jensen was employed. But her testimony was equally vague and not helpful concerning the hours Mr. Jensen worked.

Finally, Paulette Andher, who held numerous positions at the Resort before becoming general manager, testified. Ms. Andher explained that there are busy seasons at the Resorts and slow seasons with few or no guests. She calculated that, based on her own experiences, removing snow at the resort took approximately two hours on snowy days. She testified that after Mr. Jensen had shoveled snow, he frequently took a rest during his regular work day.

In sum, the defense witnesses simply did not have sufficient evidence to rebut Mr.

Jensen's evidence about the hours he worked at the Resort.

## CONCLUSIONS OF LAW

**UPI Violated the FLSA By Failing To Pay Mr. Jensen Overtime Compensation.**

FLSA requires that an employer pay a non-exempt employee overtime wages for each hour worked over forty hours per week. Generally, "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1); see also 29 U.S.C. § 213(a) (setting forth "bona fide executive" exemption).

Based on the evidence, the court concludes that Mr. Jensen worked many overtime hours during his employment with UPI. Further, Mr. Jensen was not a bona fide executive for a good portion of that time. Because UPI did not compensate Mr. Jensen for those non-exempt overtime hours (calculated below), the court finds that UPI violated Section 207 of the FLSA.

**The Three-Year Statute of Limitations Applies.**

Because Mr. Jensen filed his complaint on March 1, 2005, the two-year statute of limitations of the FLSA will bar any of his claims that arose before February 15, 2003, unless UPI's violation was willful. A three-year limitation period would then apply. 29 U.S.C. § 255(a).[2]

To establish that UPI acted willfully, Mr. Jensen must show that UPI "either knew or

---

[2]The cause of action for the payroll period of February 16, 2003, through February 28, 2003, accrued after March 1, 2003, and is included within the two-year limitation period. See 29 U.S.C. § 255(a).

showed reckless disregard for the matter of whether its conduct was prohibited by the statute . . . ." McLaughlin v. Richland Shoe Co., 486 U.S. 128, 1332 (1988). Negligence or a good faith but incorrect assumption that a pay plan complies with the FLSA do not meet the criteria for a willful violation of the FLSA. Id. at 135.

After a careful consideration of the evidence in this case, the court concludes that UPI's violation of the FLSA was willful. First, Richard Knapp, the president and sole shareholder of UPI, is a sophisticated and knowledgeable businessman. He has a law degree. Also, he owns four hotels through UPI, and he previously owned a number of apartment buildings. He is familiar with the requirements of the FLSA, having reviewed its requirements with his CPA when Mr. Knapp first started in the hotel business. He testified that he believed that Mr. Jensen was an exempt employee because he was hired as the chief engineer and was paid a salary. But significantly, Mr. Knapp knew that on July 16, 2003, Keith Howard replaced Mr. Jensen as chief engineer, taking over Mr. Jensen's supervisory duties, yet UPI did not begin paying Mr. Jensen overtime compensation. To the court, this undermines Mr. Knapp's proffered explanations for its actions, and the court concludes that UPI acted with reckless disregard regarding the requirements of the FLSA. Accordingly, the three-year limitation period applies and none of Mr. Jensen's claims are barred.

**Mr. Jensen was an Exempt Employee for a Limited Time During His Employment.**

As noted above, the FLSA requires employers to pay their employees at least one and one-half times their regular wages for the number of hours worked that exceed forty in any given week. 29 U.S.C. § 207(a)(1). An exception is made for employees "employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1).

In earlier decisions, the court held that Mr. Jensen did not fall within this exception from December 28, 2002, through May 15, 2003, and from July 17, 2003, through December 23, 2004. (See Aug. 11, 2006 Order (Dkt # 40); Aug. 3, 2006 Order (Dkt # 37).)  The court did not rule on the remaining period of time (May 16, 2003, to July 16, 2003).  (Aug. 3, 2006 Order (Dkt # 37) at 1.)  Now the court concludes that Mr. Jensen was an exempt employee under the FLSA from May 16, 2003, through July 16, 2003.

UPI bears the burden of proving that Mr. Jensen was an exempt employee.  And generally a court is to narrowly construe exemptions against the employer seeking to assert an exemption. Auer v. Robbins, 519 U.S. 452, 462 (1997).  An employee must fit "'plainly and unmistakenly within the exemption's terms . . . .'"  Hays v. City of Pauls Valley, 74 F.3d 1002, 1006 (10th Cir. 1996) (quoting Aaron v. City of Wichita, 54 F.3d 652, 657 (10th Cir. 1995)).

To determine whether Mr. Jensen was exempt during the disputed periods of time, a court is to apply the "short test" set forth in 29 C.F.R. § 541.1 (July 1, 2004).[3]  See Department of Labor v. City of Sapulpa, Oklahoma, 30 F.3d 1285, 1287 (10th Cir. 1994) (discussing the "short test" and when it should be used in lieu of the "long test").  That regulation (setting forth the "short test") reads in relevant part:

> The term employee employed in a bona fide executive . . . capacity in section 13(a)(1) of the [FLSA] shall mean any employee . . . who is compensated for his services on a salary basis of not less than . . . $250 per week . . ., and whose primary duty consists of the management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof, and includes the customary and regular direction of the work of two or more other employees therein . . . .

29 C.F.R. § 541.1(f) (July 1, 2004).  There is no question that during the disputed time periods

---

[3]The July 1, 2004 version of the regulation is the one that applies to Mr. Jensen's claim.

Mr. Jensen was earning more than $250 a week on a salary basis. Similarly, there is no question that until May 16, 2003, the aggregate hours of the two additional workers hired to assist Mr. Jensen did not total the eighty hours a week required to meet the exemption. The only remaining inquiry is whether Mr. Jensen's "primary duty" was management.

"Managing" includes duties such as hiring, firing, directing and evaluating employees, setting rates of pay, determining work techniques, and determining levels of supplies and merchandise. 29 C.F.R. § 541.102(b) (July 1, 2004). A fact-intensive inquiry is required, but "[i]n the ordinary case it may be taken as a good rule of thumb that primary duty means the major part, or over 50 percent, of the employee's time." 29 C.F.R. § 541.103 (July 1, 2004). Still, "[t]ime alone . . . is not the sole test . . . ." Id.

When an employee spends less than fifty percent of his time on management, four other factors should be considered: "'the relative importance of the managerial duties as compared with other types of duties, the frequency with which the employee exercises discretionary powers, his relative freedom from supervision, and the relationship between his salary and the wages paid other employees for the kind of nonexempt work performed by the supervisor.'" City of Sapulpa, 30 F.3d at 1287 (quoting 29 C.F.R. § 541.103).

Although Mr. Jensen spent less than fifty percent of his time on management, based on the four factors set forth above the court concludes that UPI established that Mr. Jensen's primary duty was management. UPI hired Mr. Jensen to be the chief engineer at Sherwood Hills. His duties consisted not only of maintenance work, but overseeing a property remodel that had just begun. He carried out his duties relatively free from supervision, although at the beginning of each week, he was given a list of work that the Resort's general manager wanted him to do.

When he complained that he had too much work, additional workers were hired. Moreover, Mr. Jensen was involved in the decision of which applicants should be hired. Mr. Jensen directed the work of these employees. Mr. Jensen decided what supplies were needed. Importantly, when the owner and the general manager of the Resort came to the conclusion that Mr. Jensen could not fulfill the duties of chief engineer, Keith Howard was brought to the Resort to fill the position of chief engineer. Once that occurred, Mr. Howard became Mr. Jensen's supervisor. This indicates that the job of chief engineer was a supervisory, management position. Based on the above analysis, the court holds that Mr. Jensen's primary duty between May 16, 2003, and July 16, 2003, was management. Accordingly, Mr. Jensen was exempt from FLSA overtime compensation requirements for that two month period.

**Mr. Jensen's Hours as a Non-Exempt Employee Exceeded Forty Hours Per Week.**[4]

An employer must maintain accurate records of the number of hours worked each workday and workweek by each employee. 29 C.F.R. § 516.2(a)(7) (July 1, 2004). UPI admits that it failed to keep records of the time worked by Mr. Jensen but contends that its failure was a result of its belief that Mr. Jensen was an exempt employee.

---

[4] Only in its Proposed Findings of Fact and Conclusions of Law did UPI raise the issue of "fluctuating workweek." The court declines to consider this tardily-raised theory. To do otherwise would be extremely prejudicial to Mr. Jensen and unduly burdensome to the court because this issue was not raised in any of the previous briefings or in the Pretrial Order and, consequently, not explored at trial. See, e.g., Cortez v. Wal-Mart Stores, Inc., 460 F.3d 1268, 1276-77 (10th Cir. 2005) ("Rule 16(e) provides that the pretrial order 'shall control the subsequent course of the action unless modified by a subsequent order.' The purpose of the rule is to 'replace the old sporting theory of justice with a policy of putting the cards on the table.'") (internal citation omitted); Wilson v. Muckala, 303 F.3d 1207, 1215 (10th Cir. 2002) ("'[T]he pretrial order is the controlling document for trial.' As such, claims, issues, defenses, or theories of damages not included in the pretrial order are waived . . . .") (internal citation omitted).

The Supreme Court stated in Anderson v. Mt. Clemens Pottery Co., that:

> an employee has carried out his burden [in a claim for back wages under the FLSA] if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

328 U.S. 680, 687-88 (1946). Given the above statement, UPI's argument does not prevail.

Because of UPI's failure to keep records of the time Mr. Jensen worked and because UPI produced only thirty of the records that Mr. Howard had Mr. Jensen keep, the court can only arrive at an approximate number of hours. But based on the available evidence, and weighing the credibility of the witnesses, the court concludes that Mr. Jensen's estimate that he worked an average of sixty-three hours each week he was at the Resort is fair. This figure takes into account the fact that during the winter months, Mr. Jensen was in charge of snow removal, a job that took several hours. Further, it is undisputed that Mr. Jensen often answered calls after his usual workday had ended (although there is little documentary evidence to establish how often Mr. Jensen did this or how long he spent on the calls). And Mr. Jensen testified that before Mr. Howard arrived, he worked seven days a week; UPI offered no credible evidence to rebut his testimony.[5]

---

[5] Once Mr. Howard became chief engineer at the Resort, he gave Mr. Jensen time off each week although the evidence is unclear how much. Given the evidence that Mr. Jensen's time off was often interrupted by unscheduled maintenance calls, and given the vagueness of Mr. Howard's testimony on this matter, his testimony on that point does not change the court's calculation of Mr. Jensen's work hours at the Resort.

Once at Branbury (beginning May 15, 2004), Mr. Jensen's hours decreased somewhat. He testified that he worked five days a week, plus every other Saturday. He further testified that he worked 9.25 hours per day from Monday through Friday, and five to ten hours every other Saturday. UPI provided no credible evidence to rebut Mr. Jensen's testimony regarding the number of hours he worked each weekday, and so that calculation stands. But there is some discrepancy in the testimony regarding Saturdays. Mr. Howard testified that he and Mr. Jensen usually worked a couple of Saturdays a month, but that, on average, they worked less hours on those Saturdays than they did on weekdays. He estimated that they worked between five and nine hours on those extra days. Considering Mr. Howard's estimate and Mr. Jensen's estimate, the court finds that a figure of six hours for every other Saturday reasonably compensates Mr. Jensen for his time on weekends.

On August 16, 2004, Mr. Jensen transferred from Branbury back to the Resort. He testified that he spent his first week back splitting time between the Resort and Branbury, for a total of seven days. After that, he devoted his time to the Resort. Nothing in the evidence suggests that Mr. Jensen's work duties and hours during his first period of employment at the Resort changed when he returned in August 2004 for his second period of employment. Accordingly, the court finds that the figure of sixty-three hours per week applies to the period of August 16, 2004 to December 23, 2004.

**Mr. Jensen is Entitled to Overtime Compensation and Liquidated Damages**.

Liquidated Damages

Mr. Jensen seeks liquidated damages, which are available under the FLSA: "Any employer who violates the provisions of . . . section 207 [overtime wages] shall be liable to the

13

employee or employees affected in the amount of their . . . unpaid overtime compensation . . . and in <u>an additional equal amount as liquidated damages</u>."  29 U.S.C. § 216(b) (emphasis added).  Liquidated damages are compensatory, not punitive, in nature.  <u>See, e.g.</u>, <u>Jordan v. United States Postal Serv.</u>, 379 F.3d 1196, 1202 (10th Cir. 2004) ("'[l]iquidated damages are not a penalty exacted by the law, but rather compensation to the employee occasioned by the delay in receiving wages due caused by the employer's violation of the FLSA") (quoting <u>Herman v. RSR Sec. Servs. Ltd.</u>, 172 F.3d 132, 142 (2d Cir. 1999)).

And liquidated damages are the norm rather than the exception.  <u>City of Sapulpa</u>, 30 F.3d at 1288-89 ("The FLSA provides that an employer who violates the overtime provisions of § 207 ordinarily is liable for unpaid overtime compensation and 'an additional equal amount as liquidated damages.'") (quoting 29 U.S.C. § 216(b)).  The court "may eliminate or reduce the award of liquidated damages only if the employer demonstrates 'both that he acted in good faith and that he had reasonable grounds for believing that his actions did not violate the [FLSA].'"  <u>City of Sapulpa</u>, 30 F.3d at 1289 (citing 29 U.S.C. § 260, and quoting <u>Doty v. Elias</u>, 733 F.2d 720, 725-26 (10th Cir. 1984)).[6]

As noted above, the court finds that UPI willfully violated 29 U.S.C. § 207.  For the same reasons, the court finds that UPI has not established an honest intention to ascertain and follow the FLSA requirements.  And UPI has not established reasonable grounds for believing its failure

---

[6]The FLSA provides that, "if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of [FLSA], the court, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title."  29 U.S.C. § 260.

to pay overtime to Mr. Jensen did not violate FLSA.  See, e.g., Renfro v. City of Emporia, Kansas, 948 F.2d 1529, 1540 (10th Cir. 1991) ("The good faith requirement mandates [that] the employer have 'an honest intention to ascertain and follow the dictates of the [FLSA].'") (quoting Marshall v. Brunner, 668 F.2d 748, 753 (3d Cir. 1982));  Doty v. Elias, 733 F.2d 720, 726 (10th Cir. 1984) ("An employer's ignorance of the requirements of the [FLSA] does not constitute reasonable grounds for believing that his actions complied with the Act.").  For these reasons, Mr. Jensen is entitled to liquidated damages, as calculated below.

Calculation of Damages Award

Mr. Jensen is entitled to one and a half times the number of overtime hours he worked times his hourly wage, doubled (for liquidated damages).  See 29 U.S.C. §§ 207, 216.  The table in Appendix A (attached) breaks down his periods of employment, overtime hours, and wages to fill in the damages formula.  Based on the calculations reflected in the table, Mr. Jensen is entitled to overtime compensation in an amount of $43,981.17, and liquidated damages in an equal amount, for a total of $87,962.34.

**Mr. Jensen is Entitled to Attorney's Fees and Costs.**

Mr. Jensen seeks attorney's fees and costs, which are also available under the FLSA: "The court in such action [for unpaid overtime compensation] shall, in addition to any judgment awarded to the plaintiff . . ., allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."  29 U.S.C. § 216(b) (emphasis added).  Accordingly, Mr. Jensen is entitled to reasonable attorney's fees and costs, in an amount still to be determined.

Mr. Jensen is directed to file an affidavit and supporting documentation regarding attorney's fees and costs within fifteen days of this Order.  Defendant may file an opposition

within fifteen days after it receives Mr. Jensen's submission.

## ORDER

For the foregoing reasons, the court ORDERS as follows:

1.      UPI shall pay Mr. Jensen overtime compensation in the amount of $43,981.17, and liquidated damages in the amount of $43,981.17, for a total of $87,962.34 (see Appendix A, attached).

2.      UPI shall pay Mr. Jensen's reasonable attorney's fees and costs in an amount to be determined by the court after submission of affidavits, supporting documentation, and briefs, as noted above.

DATED this 24th day of January, 2007.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
United States District Judge